Lawyers who are going to argue, please approach the bench and introduce yourself for the report. Good morning, Your Honor's Assistant State's Attorney, Kalia Coleman, on behalf of the people of the State of Illinois. Good morning, Deepa Panjabi from the State Appellate Defender on behalf of the defendant appellant, Juand Donahue. Mr. Donahue is currently serving a 72-year sentence after being convicted of first-degree murder at a jury trial, and the entirety of the State's case against him consisted of two eyewitness identifications, one by a witness who admitted that she was pressured by a detective into selecting Mr. Donahue's photo and initially had selected someone else as resembling the shooter, and that someone else did not resemble Mr. Donahue. And the other witness… She didn't select him. She said it looks like him and it's not him. Sure. She said this person that she selected resembled the shooter, but she would want to see, I believe she would want to see an in-person lineup. But she definitely said he was not the shooter. She said he looks like him, but he was not the shooter. That's correct, but she said he looks like the shooter, and this person, you know, this court can look at the exhibits yourselves and decide, but I would submit that this photo does not look like Mr. Donahue. So this court should be troubled by that. And then, of course, she later gave a statement indicating that the detective had told her who to select or suggested to her who to select, and the other witness here initially described the shooter as clean-cut and later selected Mr. Donahue's photo sporting a mustache and beard. But I'm redirecting the indicate that clean-cut could easily mean someone has a mustache, they're just clean-cut in their appearance? Yes. Well, so there was some back and forth about what he meant by clean-cut. Initially on cross-examination he agreed with defense counsel that clean-cut meant no mustache and no beard, and then on redirect the prosecutor asked, well, couldn't clean-cut also mean a thin mustache and beard? And he agreed. But I would also ask this court to think about, you know, in common parlance with respect to facial hair, clean-cut generally means clean-shaven. And whatever he may have meant by clean-cut, we cannot deny that when Mr. Donahue, I'm sorry, when defense counsel asked Mr. Collins, did the shooter look different than this photo of Mr. Donahue that he selected, he said yes. And he did not have to say yes. He could have said, no, Mr. Defense Counsel, whatever I may have told the police about his facial hair, this shooter looked like the photo that I selected. And he did not say that. And that should really... If that had meant, though, that it was the mustache thing that was the holdup sort of here, it was the idea that he had initially said clean-cut just means no facial hair or clean-shaven rather. There's a big difference. He never wavered in his identification, did he? I would submit that, well, I think the question that Mr. Collins was asked was broader than that. It was, did the shooter look different than this photo? And he said yes. And I would say that's wavering. You know, I would say that's a pretty... But that could easily mean that he has a mustache. It could mean that. But, you know, I would say that that's a pretty significant difference, given the fact that there was no... This was the only specific feature that he had pointed to when describing this offender to the police. Everything else was completely generic. He might have said something about his clothing, like a blue shirt and black shorts or something. But the only specific feature he pointed to was, with respect to facial hair, he said he was clean-cut. And so I would say that even if he's wavering on this one feature, that's pretty significant, given it's the only specific part of the description that he gave. Did he ever say that he wasn't sure that he was the offender? I would say at trial when he said that he looked different than the shooter, that the photo he selected looked different, by implication, again, that... Did he ever say the police told him who to pick up? No. But certainly we have that with Tiffany, but we don't have that with Mr. Collins. Did she indicate that some lawyer came out to talk to her? No. I believe it was a defense investigator that talked to her. That's what I mean. Yeah. A defense investigator? Correct. Did she indicate some concern about the fact that she was being talked to at her home? I think this... Did the word fear come out at all in this jury trial? I think the prosecutor may have asked her, well, did you feel fearful? But we also have to consider that she voluntarily met with this investigator a second time. She didn't have to do that if she was fearful. I'm just trying to get the answer to the question. Are you saying that the state's attorney put the word in or that the witness never uttered some concern? I would say that the state prompted her to say that she was fearful. So, you know, this Court has traditionally used the five-factor test enunciated in Neal v. Biggers, and we believe the totality of those Biggers factors, in this case, weigh in Mr. Dunn's favor. And, of course, our brief goes through those five factors in detail. But here, for our purposes here, I would just ask this Court to consider that we know that the risk of misidentification increases, whereas here we have a brief, chaotic, and stressful encounter with a stranger wielding a weapon. And we know that both witnesses were distracted by Daquiri's efforts to pull his niece Tiffany away from this violent encounter. So you have all these factors present that increase the risk of misidentification. And then you have one witness indicating that she was impeached on the voluntariness of her identification. And then you have another witness admitting at trial that the person he saw shoot the victim looks different than the photo of Mr. Donahue that he selected. And it would be one thing if you have these identifications that are perhaps weak or problematic, but you also had some other corroborating evidence. But here there is no physical evidence pointing to Mr. Donahue. There's no confession. There's not one shred of other evidence except these identifications. And although this Court has held that a single eyewitness identification can be sufficient to sustain a conviction, it has to be a credible identification. These identifications had some significant problems. How about the flight evidence? Well, you're referring to the fact that Mr. Donahue fled when he was approached by the arresting officers. I would ask this Court to consider that the arresting officers at the time were undercover. So we really, I don't think it's, I don't know that we can have any confidence that he even knew that he was being approached by officers. I mean, he may have just seen some people coming at him and decided to run. You know, the standard here, it is deferential to the fact finder, but this Court has noted that that deference does not require a mindless rubber stamp. And this Court has not hesitated in the past to reverse convictions based on vague or doubtful identifications such as the identifications here. Are you going to address the preserved and unpreserved? The only other argument you raised besides reasonable doubt is prosecutorial misconduct in the closing arguments, right? That's correct. Okay. There was two different, one was the conspiracy argument and the other was the war zone. There were two comments with respect to the military. One was that the death rate was higher on the streets of Chicago than in a war zone. Was it the preserved or the unpreserved? The preserved error was the conspiracy comment, that's correct. The military comments were not preserved, but we'd ask that you address those comments under both prongs of plain error. We believe both prongs of plain error apply here. First, because the evidence was based on too weak identification, so it was far from overwhelming. And secondly, because, you know, the Supreme Court has, over and over again, has held that the second prong of plain error is particularly appropriate, whereas here you've got a continuing pattern of ongoing misconduct. This is a continuing pattern? What would you compare this to? Well, I would say... I think the war comments really don't seem to be... I don't even know why they were made. I agree with you that they probably were improper, but I don't know that this would be anything like Blue, the case of People v. Blue. But, for the most part, I don't think that the Supreme Court has indicated that generally closing argument comments rise to the level of the second prong. I'm not... There are cases where the Supreme Court has found second prong reversible plain error. I think there's Wheeler and Blue. There are cases, and here... And were they unpreserved errors? I believe so. I thought the Supreme Court has pretty much limited the substantial rights under the second prong to things like denial of right to a jury, an unbiased jury, the right to testify. I'm not sure, but I know that they don't include... closing argument comments in that grouping. Do you? I believe that they have in... Let's see. If you'll give me one moment, Your Honor. I apologize, Your Honor. I don't have the cases here with me, but I thought that the Supreme Court has applied second prong plain error, reversible error, and I thought it was Wheeler and Blue for unpreserved errors where there's a pattern of ongoing misconduct. And the prejudice they've stated is heightened. For example, where you have certain factors here that heighten the prejudice where they're made on rebuttal. So it's not like defense counsel can mitigate the impact of the state's attempt to distract the jurors with these appeals to their emotions by addressing the jurors again. And where there were objections, they were overruled. There were no instructions to disregard. So I don't know that this Court can say with confidence that the improper remarks did not contribute to the conviction. Well, you're the one that has to show that they did. The burden is on the defendant to show that the comments likely tipped the scales. I believe so. I think in Wheeler that the standard that the Illinois Supreme Court enunciated was that defendants should show that the remarks constitute a material factor in the defendant's conviction. But they explain further that this means a new trial is required if the jury could have reached a contrary verdict without the improper remarks and if the reviewing court cannot say that the improper remarks did not contribute to the conviction. And here, given these factors, I don't think you can say that the improper remarks did not contribute to the conviction. Well, weren't these remarks so bizarre that no reasonable jury would even consider them? I don't think that's the case. The state was, the prosecutor here was trying to appeal to their sense of patriotism, was trying to appeal to their emotions, and this Court has in fact held that such remarks, well, I'm sorry, it's the Second District, with respect to the remarks about how an acquittal would dishonor the truths. In People v. Threadville, the Second District held there that such remarks are a reversible error because there is significant potential for the jurors to consider such remarks and that such remarks can inflame the jurors' passions and distract them from the proper considerations before them, the evidence at trial and the inferences that can be made therefrom. Reversible error is different than plain error. I'm sorry? Reversible error is different than plain error. Plain error is a specific principle that we have that says, you know, things are generally forfeited if they aren't objected to and then included in a motion for a new trial. That's correct. And the burden is on MUVA to show, or the defendant rather at this stage, that those comments about the death rate in the city is worse than in the military. You would be the one who would have to show that that actually caused in some way the jury to come to the conclusion that he was guilty of this shooting death. Correct. But we would argue here that the defendant has met that burden. These remarks were completely without any propriety. That doesn't mean because they were improper or erroneous or even off the wall. That doesn't mean that they contributed to the conviction. I understand, Your Honor. I mean, I don't know. That's my understanding. It's not just saying it. You have to show that somehow the jury was influenced by these comments. Now we have a judge telling them that closing arguments and opening statements are not evidence. They're told that at the beginning. They're told that at the end. They're also instructed that they are not to consider any arguments that aren't based on the evidence. That's true, Your Honor. This Court has also held that those stock instructions do not always erase the prejudice from such improper argument. That's true. Were there any other questions that I can address from this Court? Thank you. So should this Court not grant outright reversal, we'd ask that you grant or remand and for a new trial under Argument 2. Thank you. May I please the Court? Counsel? Have you been here before, Ms. Coleman? I have, Judge. Welcome back. Thank you. The evidence in this case, viewed in a light most favorable to the prosecution, sufficiently established that the identifications made by Tiffany LeBond and Dakiri Collins, that the defendant was the person that fired that weapon and shot and killed LaWade LeBond on June 14th of 2008, was sufficient to support a conviction in this case beyond a reasonable doubt. As Your Honors are aware, the critical inquiry on a review of a sufficiency of the evidence claim is whether viewing the evidence in a light most favorable to the prosecution, whether any rational trier fact could have found the essential elements of the crime beyond a reasonable doubt. With reference to eyewitness testimony, it may be found insufficient only where the record compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. As counsel mentioned to the Court, Illinois courts have adopted the five-factor test outline in the U.S. Supreme Court case of Neal v. Biggers to assess the credibility or reliability of eyewitness identifications. Those five factors are the opportunity to observe the offender at the time of the commission of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the time of the identification confrontation, and the length of time between the crime and the identification confrontation. Counsel, in her argument, challenges primarily the opportunity to view the victim, the accuracy of the prior description, the level of certainty in the witness's degree of attention. With reference to the first factor, the testimony elicited at trial from both Tiffany and D'Curie Collins establishes that they have more than a sufficient opportunity to observe the defendant before the altercation between LeWay and LeBond. How much time did they have when the guy pulled the gun on the dog? According to the record, Judge, when the defendant initially approached and pointed the weapon at the dog and made the statements he made, Tiffany LeBond stated that that occurrence was one to two minutes before the defendant left the scene. D'Curie Collins never explicitly gave testimony as to how long that encounter was. He did testify, however, that the entire time frame from the initial approach of the defendant to the shooting was five minutes. So we can infer, in a rational trier fact, could have inferred from that testimony that Tiffany LeBond at least had one to two minutes to observe the defendant, and that D'Curie Collins had at least some number of minutes. She was mostly looking at the gun, wasn't she? There was never any testimony, Judge, that Tiffany LeBond was focused on the gun. In fact, the testimony elicited at trial contradicted such an assertion. She testified that she clearly saw the defendant's face. The question was posed to her how the lighting conditions were in that area. She said it was a well-lit area, that there were street poles in the area. Given that testimony, there was no rational basis that a trier fact could infer, as defense counsel asserts, that Tiffany LeBond or D'Curie Collins were somehow distracted by the presence of that weapon. Also, Judge, the fact that you have evidence showing that at some point the defendant left that scene, he went somewhere else before the defendant pulled up, which would have given those witnesses an opportunity to leave that scene or somehow try to flee if there was any fear because he had a weapon. So given those factors, I don't think there's anything, and it's the people's position, there's nothing in the record to support an assertion that they did not have sufficient opportunity to observe the defendant in this case. Also, with respect to the challenge to the accuracy of the description given by there was, as Justice McBride pointed out, there was testimony at trial on redirect where the state rehabilitated Tiffany LeBond's testimony. The state specifically asked the question, did you pick out the defendant in the second photo array on June 25th? And she said yes. And in fact, during cross-examination, when Attorney Weiner brought out the fact that she gave this statement to Investigator Sanders, she cut him off when he started asking her, isn't it true that you said that the detective pointed and said, is this him, is this him? And Tiffany LeBond said, I pointed before, not after. And then she went on to explain, and her exact words were, I've never been through this before, so I didn't know what to expect after this by me coming from the same neighborhood. And that she was fearful because she wasn't aware. She knew that this person was appearing at her home on behalf of the shooter in this case. That evidence was brought forth to the jury. They heard that. It's within the province of the jury to resolve any inconsistencies. That information was brought. There was effective cross-examination in this case, and the jury decided to resolve that inconsistency or alleged inconsistency in favor of deciding that Tiffany LeBond's identification was reliable. Additionally, Judge, there is case law, and counsel cites to Webb v. Havener in her brief, and it's the 6th District case, but there is some important language in that case. The court in that case cites to Simmons v. United States in arguing that the court recognized that despite any intervening impermissible identification, the eyewitness may retain a clear image of his assailant based on observations at the time of the crime. So this is sort of an independent factor test. Even if the court were to determine that there was some truth to this handwritten statement, which, by the way, it was never specifically established that Tiffany LeBond wrote that statement. In fact, it appears from looking at the document that Investigator Sanders wrote that statement as an interpretation of oral statements that Tiffany LeBond gave to him. But even if the court were to consider that those statements made by her were somehow problematic, there is an independent factor test that can be employed. And even Illinois courts and People v. Flowers, the 3rd District, acknowledged this independent factor test that where there is evidence that shows that a witness had ample opportunity to observe the offender at the time of the commission of the crime, that this will alleviate any concerns of a suggestive identification. Let's talk about the closing arguments. In terms of this first comment about the conspiracy theory, but the second one about the armed services, you say that, well, you have two responses. One, that it was invited by the defense attorney's remarks. And two, it was improper. The defendant can't establish that it rose to the level of plain error so that it was forfeited. Are lawyers supposed to be arguing things that aren't in the evidence? For example, like the death rate in the military is less than the death rate in the city of Chicago. Judge, Justice McBride, ordinarily the standard of law is that in order for invited response to or invited comment to occur, the prosecutor or the defense should constrict their closing arguments to facts and evidence. We will concede that point. However, there was a mention by the defense attorney in the beginning of his closing argument regarding his service in the military. This is what he said. Some of us were in the armed forces, and when we were, we were proud and honored to be people that were involved in defending our country. And then he says one of the most maligned phrases that has been put out in the media and in just the general public is what's called criminal justice system. People think, oh, my goodness, criminal justice system, what does that mean? Is it really fair? So that's what he said. Now, I don't know why he said that either, because I really don't see what importance it has that he was in the military and, in fact, that's not in the record either. My question to you was, are lawyers supposed to be making comments that have nothing to do with the evidence that was presented? No, Judge, they are not. However, the statements that are challenged here, which are the war zone statements. Don't you think that the response here was more like a hammer on a, you know, a pin or something? I mean, his response was out of wherever. I mean, I don't know how this comment is a response to some of us were in the armed forces. Perhaps, Judge. But as Your Honor knows, these statements and the propriety of these statements have to be reviewed under the guise of plain error review because they were not preserved properly for appeal. And as part of that plain error analysis, the court has to go beyond considering whether or not there was error, even if the court finds that those statements were erroneous. The evidence in this case, the people's position was not closely balanced. Additionally, there was no substantial prejudice to the defendant. Those isolated remarks were not pervasive to the, in comparison to a lot of the cases cited by counsel in her brief where there was reversal. Do you agree with counsel's suggestion that the state's misconduct was pervasive? No, Judge. Then why not? In order, if Your Honor looks at the numerous, the case law regarding prosecutorial misconduct, and specifically at the cases cited by defense counsel, people v. Frazier, people v. Blue, people v. Threadgill, I believe counsel talked about people v. Wheeler. What seems to be a common thread within those cases that constitute pervasiveness is when the prosecutor makes continuous comments, even after there are objections that are sustained, continues to make improper comments, such as bolstering the credibility of police officers just merely because of their status as witnesses. For instance, in people v. Blue, first of all, that case was reviewed under reversible error because the issues were preserved for appeal. Counsel during that case, defense counsel, consistently objected to the credibility of officers. That was a case that involved the murder of a police officer. During trial, the prosecution actually displayed a mannequin displaying the actual uniform of the officer that had been shot and killed that had evidence of the brain splatter from the officer when he was shot in the head. That coupled with the fact that during closing argument, the prosecutor consistently made remarks about showing loyalty and support to the police department, vindicating the victim's family in that case, all of those issues coupled together constituted pervasiveness. I don't think that in the people's position that the facts in this case do not support that. Particularly in light of the fact that in reviewing the propriety of prosecutor's remarks, the court is required to consider the entirety of the prosecutor's remarks and to place them in context. And if your honor looks at the entirety of the prosecutor's rebuttal argument, immediately after referencing the war comments, the prosecutor goes on to say and redirect the jury to focus on the evidence by specifically saying, but you are entrusted to be the members of society who are going to see that justice is done and our society promises safety and justice to its citizens. I told you before when I gave my opening statement that you have been vested within the powers of justice in this case, and that's a great and tremendous power. I know that in this case that means convicting this defendant of the crime that he was proven guilty of by the two eyewitnesses who saw him, by the defendant's own actions, and by all the evidence you have had in this case. So that was the conclusion of the prosecutor's rebuttal argument, which specifically redirected the jury to consider the facts and the evidence in the case that was brought before them in order to make a finding of guilty. And before the prosecutor even began in the beginning of his rebuttal argument, he in fact reminded the juries that closing arguments are not evidence, that you're going to get this instruction, that closing arguments are not evidence, and anything said by myself or defense counsel is not to be used in this case. So I think those facts greatly distinguish this case from the cases that are cited to in defense counsel's brief where there was obvious pervasiveness there. There were things done both at trial, evidentiary issues, things that were improperly admitted, and also comments that were continuously made despite sustained objections that distinguished those cases from the case at bar. One other thing that the people would like to comment on, going back to the first issue that I neglected to mention, is this argument that there was no additional corroborating evidence. As your Honor knows, and also in the case of people v. Negron, the court spoke to this issue and said that lack of physical evidence is not in and of itself a reason for reversal. I will submit to you that beyond the reliability of the two eyewitness identifications, you do have the evidence of flight, despite the fact that counsel argues that Mr. Donahue or the defendant was not aware that that was the police. There was a 20 or 30-minute chase here where the officers gave chase. I'm sure, and it would be rational for a trier fact to assume that the officers announced that they were police officers and the defendant continued to run. That flight is evidence of consciousness of guilt. There was also the testimony that the defendant lived, his address was at 2753 West Jackson, which put him close within the vicinity of where the shooting occurred. And also that although the vehicle was, when they found it, was registered to the address in Elgin, the defendant's girlfriend's address in Elgin, that vehicle was originally registered to 2609 West Jackson, which also ties the defendant to that area. So given all of those factors, I will submit to the court the evidence in this case was sufficient to make a finding of guilt. The prosecutor's remarks were not improper. Even if improper, plain error analysis should not apply, and I would ask this court to affirm defendant's convictions and sentence for first-degree murder. Thank you. A very short rebuttal. Yes, sir. With respect to Tiffany's testimony about her statement to Investigator Sanders, I believe it was on redirect that she stated that the detective may have pointed out Mr. Donahue after she selected that photo. But she, again, upon further questioning by defense counsel, stated, look, I was unsure who to pick. I had these five photos. I was unsure who to pick. And then the detective started pointing at this photo, and I felt that's who I was supposed to pick. And to the extent that there's some confusion about this and some back and forth about this, this court can look to the written statement. The written statement says, I did not know who to pick, and the detective started pointing at this photo, and then that is who I picked. Ms. Coleman also pointed to some of these other bigger factors, particularly the ability to view the offender. However this court chooses to weigh out the individual discrete bigger factors, it's important to remember this is a totality of the circumstances test. So, for example, even if Tiffany had a good opportunity to view the offender, this court should ask itself, why then was she unable to describe the shooter with any specificity? If Zachary had such a good opportunity, why then did he give a generic description except with respect to facial hair, which then there's some ambiguity later at trial about this feature? With respect to our second argument, I would submit that this was pervasive misconduct where we have multiple comments about the military that are completely improper, and then you have this police conspiracy comment, which this court has repeatedly condemned. And where you have evidence that is far from overwhelming, I would say that this constitutes reversible error. You know, Ms. Coleman pointed to the issue of flight. I don't think this court can just assume that the police officers announced their office. I don't think the court can just read facts into the record that are not there. So where the evidence was far from overwhelming, I would argue that this misconduct warrants a new trial. Thank you. Thank you very much, and we'll take this case under advisement. The court is adjourned.